IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CAROLYN M. WELLS,**

        **Plaintiff,**

v.                                                    Civil Action No. 2:06cv177

**UNITED STATES of AMERICA,**

        **Defendant.**

## OPINION & ORDER

This matter is before the Court on Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, on Statutory Employer Immunity ("Defendant's Motion"). Doc. 7. The motion is fully briefed. Docs. 8, 9, and 10. For the reasons stated herein, the Court **GRANTS** summary judgment for Defendant.

### I. Factual & Procedural Background[1]

Petty Officer Eric W. Scherer was stationed with the U.S.S. STOUT at all times relevant to this action. Doc. 9 ("Reply Br.") at 7. On September 13, 2002, the U.S.S. STOUT was undergoing maintenance and repair at Marine Hydraulic International ("MHI") in Norfolk,

---

[1] The following facts are taken from Plaintiff's Reply Brief, depositions attached to Plaintiff's Reply Brief, and Plaintiff's answers to Defendant's request for admissions. Doc. 9, Exs. 1-3, & Doc. 8, DEX 1.

Virginia. Id. at 3-7. On the night of September 12-13, 2002, Scherer stayed at a private residence on shore. Id. at 7. On the morning of September 13, 2002, Scherer drove to MHI in a personal vehicle to return to the U.S.S. STOUT. Id.

Scherer arrived at the U.S.S. STOUT prior to "muster," also known as "quarters." Id. Scherer was required to report for muster. See Reply Br., Ex. 3 ("Burger Dep.")[2] at 22 ("regardless of the circumstances, Petty Officer Scherer has to report to the ship"); id. at Ex. 2 ("Dorsett Dep.") at 15 ("He's going to come to the ship every morning, whether he has duty or not."); and id. at Ex. 1 ("Scherer Dep.") at 9 ("Every day, you have to be there for muster."). Muster includes roll call, the daily and weekly plans for the ship, and the assignment of each individual's daily work through a work center supervisor. Berger Dep. at 13-16; Dorsett Dep. at 9-12 & 14-15; and Scherer Dep. at 20-21. The morning muster represents the "expiration of liberty." Berger Dep. at 13 & 25. Once Scherer reported for muster, he became "the responsibility of the ship until [he was] released." Id. at 22. Failure to report for muster would have been an "unauthorized absence." Dorsett Dep. at 14-15 & 28.

Scherer departed MHI after muster to perform maintenance on the U.S.S. STOUT's weapons systems at Shore Intermediate Maintenance Activities ("SIMA"). Reply Br. at 8. Scherer would not have to later return to the U.S.S. STOUT; instead, he was to be released directly from SIMA. Id. at 8-9. Scherer was instructed to perform the work at SIMA. See Berger Dep. at 14-15; Dorsett Dep. at 10-11; and Scherer Dep. at 11-12. Neither Scherer, nor the owner of the personal vehicle driven by Scherer, was reimbursed for mileage or gas, although

---

[2] All references to the depositions of Burger, Dorsett, and Scherer are to depositions attached to Plaintiff's Reply Brief. Reply Br. Exs. 1-3.

Scherer's use of the personal vehicle was allowed. Berger Dep. at 18 & 26-27; Dorsett Dep. at 23-24; and Scherer Dep. at 13-14.

The personal vehicle driven by Scherer allegedly struck Plaintiff as Scherer left the MHI parking lot after muster. Reply Br. at 6-7. Plaintiff filed a personal injury action in state court and legal process was served on the Secretary of the Commonwealth of Virginia, as the statutory agent for Scherer, on February 1, 2006. Doc. 1, Ex. A. On March 16, 2006, the United States Attorney certified that Scherer was acting within his scope of employment for the purposes of removal, id. at Ex. B., and on March 24, 2006, the action was removed to this Court. Id.

Plaintiff has applied for and received workers' compensation under the federal Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq. Plaintiff also has applied for and received workers' compensation under the Virginia Workers' Compensation Act ("VWCA"), which was applied dollar-for-dollar to her LHWCA award. See Doc. 8, DEX 1, Response to Request for Admissions #8.

## II. Legal Standards

### A. Summary Judgment

Entry of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(c). Plaintiff agrees that the material facts as to both the statutory employer issue (under the VWCA) and the scope of employment issue are not in dispute. Doc. 9 at 3. Summary judgment against Plaintiff is therefore appropriate if Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential

[Plaintiff's] case, and on which that party will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," id. at 323.

## B. Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA") provides that recovery from the United States excludes recovery from an employee of the United States, provided that the employee was "acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). See Garrett v. Jeffcoat, 483 F.2d 590, 593 (4th Cir. 1973) (section 2679(b)(1) acts to "release . . . the servant from liability" in tort while acting within the scope of his employment) (internal quotation marks and citations omitted).

The United States Attorney may certify that a federal employee was acting within the scope of his employment, and this certification is sufficient to remove the matter to federal court. 28 U.S.C. § 2679(d)(2). Once this certification is made, the United States is substituted as the defendant. Id. While such certification is conclusive for the purposes of removal, substitution of the United States may be challenged in federal court by challenging the scope-of-employment certification. Martinez v. Lamagno, 515 U.S. 417, 430-31 (1995).

Scope of employment for the purposes of the FTCA is determined by reference to the respondeat superior law of the state in which the alleged wrongful conduct occurred. See, e.g., Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1156 (4th Cir. 1997). If a plaintiff refutes the scope of employment certification by a preponderance of the evidence, then the burden of persuasion shifts to the United States to show that the wrongful conduct occurred

4

within the scope of employment. Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). The district court reviews the Government's certification de novo. Martinez, 111 F.3d at 1154. As the alleged wrongful conduct occurred in Norfolk, Virginia, Virginia law defines respondeat superior liability in the present matter.

### C. Virginia Respondeat Superior Liability

In the Commonwealth of Virginia, the doctrine of respondent superior holds employers liable for damages caused by employees acting within their scope of employment at the time of the injury. See, e.g., Butler v. Southern States Cooperative, Inc., 270 Va. 459, 466 (2005); Smith v. Landmark Commc'ns, Inc., 246 Va. 149, 151-52 (1993); and Sayles v. Piccadilly Cafeterias, 242 Va. 328, 332 (1991). The party arguing for respondeat superior liability, which in the present case is Defendant, must establish that the relationship of master and servant existed at the time of the injury and with respect to the specific action out of which the injury arose. See, e.g., Smith, 246 Va. at 151; Sayles, 242 Va. at 332.

An employee's action is within the scope of his or her employment when (1) the employee's act was "fairly and naturally incident" to the employer's business; and (2) the employee's act:

> [was] done while the servant was engaged upon the master's business and [was] done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

Smith, 246 Va. at 151-52. Under Virginia law, the fact that an employee's act benefits both himself and his employer does not take that act outside of the employee's scope of employment, even where the employee's "predominant motive" is to benefit himself. Bryant v. Bare, 192 Va.

5

238, 244-45 (1951) (citing Restatement (First) of Agency § 236). The "scope of employment" analysis for respondeat superior liability is analogous to the requirement under the VWCA that the injury occur "in the course of" employment to be covered by the VWCA. Butler, 270 Va. at 466.

Commuting to and from work is generally not "a natural incident of [the employer's] business." Smith, 246 Va. at 152; see GATX Tank Erection Co. v. Gnewuch, 221 Va. 600, 603-04 (1980) (citing Kent v. Virginia-Carolina Chemical Co., 143 Va. 62, 66 (1925)); and Ross v. Bryan, 309 F.3d 830, 834 (4th Cir. 2002). This general "commuter rule" has several exceptions. Commuting to and from work is within an employee's scope of employment when: (1) "the means of transportation is provided by the employer or the time consumed is paid for or included in the wages;" (2) "the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer;" and (3) "the employee on his way to or from work is still charged with some duty or task in connection with his employment." GATX, 221 Va. at 603-04 (citing Kent, 143 Va. at 66).

The general "commuter rule" does not apply to traveling from one work assignment to another. An employee injured while traveling from one work location to another is injured "in the course of" his employment for the purposes of the VWCA. Taylor v. Robertson Chevrolet Co., 177 Va. 289, 297-98 (1941). In Taylor, a car salesman had worked on the sales floor during the daytime and was required to work that night at an off-site warehouse. Id. at 292-93. An accident occurred while the employee was en route to the warehouse.[3] Id. The Supreme Court

---

[3] When traveling between work locations an employee may detour from the shortest or directed path, but if the employee "may be said to be on a 'frolic' of his own, the master is no longer answerable for the servant's conduct." Taylor, 177 Va. at 295 (citation omitted). While

of Virginia observed that this was "a simple case in which [the employee] was required by the [employer] to go from one assignment to another," id. at 297-98, and held that when a worker's duties for the day "had not been completely performed," travel between work locations is an activity "in the course of" employment, id. at 297 (citation omitted).

### III. Discussion

#### A. Plaintiff's Arguments

Plaintiff argues that the Fourth Circuit's holding in Ross v. Bryan, 309 F.3d 830 (4th Cir. 2002), is controlling as to whether or not Scherer was within his scope of employment at the time of the accident. Bryan applied Virginia's "commuter rule" to hold that an active-duty serviceman, who was living on a military installation, and who was commuting to his duty station on the same military installation, was not within his scope of employment when he was involved in an accident. 309 F.3d at 834. The court was persuaded by the fact that Bryan had not yet arrived at his "immediate place of duty," was not driving a "government supplied or authorized vehicle," was not reimbursed for his mileage, and his attendance at his duty station did not "include the use of a government supplied vehicle." Id. The Court added that "[j]ust as, or more, importantly, Bryan was simply commuting to work . . . ." Id.

The Fourth Circuit distinguished the case of Wilkinson v. Gray, 523 F. Supp. 372 (E.D. Va. 1981), aff'd, 677 F.2d 998 (4th Cir. 1982), which held that a naval officer was operating within his scope of employment when he was ordered to pick up and deliver mail and parts for

---

the employee in Taylor had stopped home for supper, the court held that this was not a "frolic" because he had to eat supper somewhere between assignments and his home was on his way to the warehouse. Id. at 297-98 ("The detour to his home was too slight to be of moment.").

his ship. See Bryan, 309 F.3d at 834. The officer received a per diem allowance for mileage, food, and lodging, and a rental van. Id. The officer was involved in an accident after delivering his ship's mail. Id. Plaintiff argues that Gray is not applicable because, unlike the naval officer in Gray, neither Scherer, nor the owner of the personal vehicle driven by Scherer, was reimbursed for mileage or gas. Reply Br. at 9 (citing Dorsett Dep. at 23-24).

Plaintiff argues that muster was not material for Scherer on September 13, 2002, because Scherer expected that he would perform weapons system maintenance at the SIMA site that day. Id. at 9. Plaintiff points to Dorsett's statement that "in the case of Mr. Scherer, his duties at SIMA would have 'been a set thing, and unless told otherwise to stay on the ship, Mr. Scherer would have known to report to SIMA.'" Id. at 11 (citing Dorsett Dep. at 26).

Plaintiff further argues that Scherer's driving to SIMA was not within his scope of employment because driving a personal vehicle served Scherer's personal convenience. By driving a personal car, Scherer would be able to go directly home after working at SIMA, unless he was instructed to return to the U.S.S. STOUT. Id. at 8-9 (citing Burger Dep. at 26-27; Dorsett Dep. at 23; and Scherer Dep. at 14). Plaintiff argues that the fact that muster "was held at MHI does not change the fact that Mr. Scherer's place of duty on the date of the accident was SIMA," and that "Scherer's commanding officers could have just as easily provided that Scherer's superior officer at SIMA notify them if [Scherer] failed to report as ordered." Id. at 12. Plaintiff concludes that "[r]eporting for muster, or dressing in one's uniform, are simply incidental to the employer's business." Id. at 13.

### B. Defendant's Arguments

Defendant argues that the accident occurred within Scherer's scope of employment

8

because the master-servant relationship was established at muster, prior to the accident. Defendant points out that Scherer was required to report for muster at the U.S.S. STOUT. Doc. 10 ("Rebuttal Br.") at 11 (citing Dorsett Dep. at 14-15 ("you have to start every day in front of the division officer . . . ."); Berger Dep. at 22 ("regardless of the circumstances, Petty Officer Scherer has to report to the ship"); and Scherer Dep. at 9 & 19). Defendant stresses that Scherer's failure to report to the U.S.S. STOUT would have been an unauthorized absence. Id. (citing Dorsett Dep. at 14-15 & 28).

Defendant argues that Scherer's expectations as to his orders for the day are immaterial to the scope of employment analysis. Rebuttal Br. at 11. Scherer had to report to muster, in part, "to consult and communicate with his immediate work center supervisor concerning his daily work assignment." Id. at 12 (citing Berger Dep. at 15-16; Dorsett Dep. at 9-12 & 14-15; and Scherer Dep. at 20-21). Scherer's work assignment was subject to change regardless of his expectations. Id. (citing Dorsett Dep. at 15 ("say he had to do something out of the ordinary, they would let him know that morning at quarters.")).

Scherer was instructed by his superiors to attend to the weapons systems off-site, and Defendant argues that Scherer's use of a personal vehicle was "an accepted, recognized, and approved means by which [Scherer] could travel to SIMA to perform the Navy's business." Id. at 13; see id. at 5 (citing Berger Dep. at 18 & 26; Dorsett Dep. at 23-24; and Scherer Dep. at 19-20). While Defendant concedes that Scherer's use of a personal vehicle might have benefitted Scherer when he was allowed to depart SIMA, Defendant argues that Scherer's use of the vehicle at the time of the accident also benefitted the Navy. Id. at 13. Only a limited number of official vehicles were available to the servicemembers stationed on the U.S.S. STOUT; allowing

servicemembers to use personal vehicles therefore made these official vehicles available for other uses. Id. at 5 (citing Berger Dep. at 26-27; and Dorsett Dep. at 23-24).

### C. Analysis

Unique to the present case is the fact that Scherer reported for muster prior to the accident. The Court hereby **HOLDS** as a matter of law that muster, or quarters, established the master-servant relationship between the United States Navy and Scherer on the morning of September 13, 2002. Muster is the loss of liberty and where servicemembers receive their orders for the day. Berger Dep. at 13-16 & 25; Dorsett Dep. at 9-12 & 14-15; and Scherer Dep. at 20-21. Scherer's personal expectation that he would again be performing maintenance work at SIMA did not relieve Scherer of his duty to report to the ship for muster each morning. Burger Dep. at 22; Dorsett Dep. at 15; and Scherer Dep. at 9. Had he reported to SIMA directly, his absence at muster would have been unauthorized. Dorsett Dep. at 14-15 & 28.

Scherer's driving from muster to SIMA was within his scope of employment. The United States Navy is required by statute and regulation to maintain and repair its equipment. Traveling to SIMA after the establishment of the master-servant relationship for the purposes of performing such maintenance is, therefore, "fairly and naturally incident" to the United States Navy's business. Cf. Taylor, 177 Va. at 297-98.

Scherer's driving to SIMA also satisfies the second prong of Virginia's respondeat superior test. An employer is liable for an employee's acts when the motivation to perform the acts "did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account." Smith, 246 Va. at 151-52 (emphasis added). Therefore, the fact that Scherer benefitted from the use of the vehicle does not preclude holding

the United States liable for Plaintiff's injuries, if the use of the personal vehicle was at least, in part, motivated to serve the Navy's interests. Cf. Bryant, 192 Va. at 244-45 (citation omitted). Because the Navy ordered Scherer to report to SIMA after reporting for muster, Scherer's traveling from MHI to SIMA was motivated by a desire to serve the interests of his employer, regardless of any personal motivations Scherer may also have had.

The Court therefore **HOLDS** that Scherer was acting within the scope of his employment when the accident occurred. As was the case in Taylor, this is a simple case in which the employee was required by his employer to go from one assignment to another. Cf. 177 Va. at 297-98. Because Scherer was acting with the scope of his employment at the time of the accident, the Court further **HOLDS** that the substitution of the United States was proper. Cf. Martinez v. Lamagno, 515 U.S. 417, 430-31 (1995).

### IV. Impact of Prior Workers' Compensation Recoveries

Plaintiff is not entitled to damages from the United States. Plaintiff applied for, and received, benefits from her employer under the LHWCA, 33 U.S.C. §§ 901, et seq. Plaintiff also applied for and received benefits under the VWCA, which were paid to her employer on a dollar-for-dollar credit for benefits paid to Plaintiff under the LHWCA, pursuant to 33 U.S.C. § 903(e). Doc. 8, DEX 1, Response to Request for Admissions #8.

Plaintiff "concedes that if this Court determines that the United States Attorney's scope of employment certification is correct, the United States would qualify as Plaintiff's statutory employer under the [VWCA]." Reply Br. at 13. As Plaintiff has already applied for and received workers' compensation from the Virginia Workers' Compensation Commission, Plaintiff is therefore barred under the VWCA from obtaining further recovery from her statutory

employer for the same injuries. Va. Code § 65.2-307. The FTCA provides that the United States "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. As Plaintiff cannot further recover from the United States under the VWCA, Plainiff is therefore also barred from any recovery from the United States under the FTCA.

### V. Conclusion

For the reasons stated herein, the Court **GRANTS** summary judgment for Defendant.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to counsel of record for Plaintiff and counsel of record for Defendant.

It is so **ORDERED**.

/s/
HENRY COKE MORGAN, JR.
UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
October 16, 2006